SARAH H. LUCE AND OTHERS, APPELLANTS, *v.* MARY DUNHAM AND OTHERS, RESPONDENTS.

*Will — construction of — Heir, next of kin — Expressions, how construed.*

After making certain devises and bequests to his widow and sisters, the testator directed that all the rest, residue and remainder of his estate should be divided equally among his *heirs and next of kin*, in the same manner as it would be by the laws of the State of New York, had he died intestate. *Held*, that the testator intended the residue of his estate to be distributed under the laws of the State of New York, in the same manner as if he had died intestate, and that the widow was intended to be included in the words heirs and next of kin, and entitled, under this direction, to participate in the distribution.

APPEAL from a surrogate's decree for the settlement and distribution of a testator's estate.

The testator had no lineal descendants, but left him surviving his widow, one sister of the whole blood and three half sisters. His estate consisted principally of ships, he leaving no real estate

except his homestead and burial lot, which were devised to his wife. After certain bequests to his wife and sisters, and certain directions as to the management of his estate, the following paragraph occurs in the will: "All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise and bequeath, and do desire and will that the same shall be divided among my heirs and next of kin, in the same manner as it would be by the laws of the State of New York had I died intestate."

*S. P. Nash*, for the appellant Sarah H. Luce.

*Rodman D. Dawson, Jr.*, for the appellants Crowell and Jernegan.

*Foster & Thompson*, for the respondent Mary Dunham.

*Charles N. Judson*, for the respondent Stephen W. Carey, as executor, etc.

Daniels, J.:

That portion of the decree from which the appeal has been taken provided for the distribution of the residue of the estate of the testator. He left him surviving his widow, one sister and three half sisters. The half sisters alone appeal from the decree. The testator made his will during his last illness, and near the period of his own decease. He then owned a household and a cemetery burial lot. The rest of his estate consisted of personal property. He devised his homestead and bequeathed the personal property upon it to his widow, and also gave her the sum of $100,000, to have and to hold to her heirs and assigns forever, as her sole and separate estate. He then gave his sister — whom he had previously provided for while he was in health — the sum of $10,000, and to each of his half sisters he gave the sum of $5,000; and he disposed of the residue of his estate in the following words: "All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise and bequeath, and do devise and will that the same *shall be divided*

*among my heirs and next of kin in the same manner as it would*
*be by the laws of the State of New York had I died intestate."*

The surrogate held that the widow was entitled, under this
direction, to participate in the distribution of the residue, the same
as though the testator had died intestate; and that determination
only is objected to as erroneous by the counsel for the appellants.
The testator's widow is now of the age of seventy years and upward.
One of his half sisters is over eighty years of age, another fifty, and
the other forty-five, and his sister is over seventy years of age. He
left his home at the age of about fourteen years and became a sea-
faring man. When he married, his wife became the companion of his
voyages, and their relations through life appear to have been cordial,
confidential and affectionate. He left his property consisting mostly
of shipping, in the hands of his executors and executrix, to be used
and employed, according to their judgment and discretion, for the
best interests of his estate, and as long as such interests should be
promoted by their management. In the mean while he declared that
his wife should "draw from the earnings of such ships and vessels
the share or portion which her interests under this my last will and
testament shall bear to the whole net earnings." These are all the
provisions in the will which it can be necessary to consider for the
purpose of ascertaining the design of the testator as to the disposi-
tion which should be made of the residue of his estate. The fact that
he left no real estate undisposed of by the specific terms of the will,
except the cemetery lot, is sufficient to render it quite evident that
the disposition of that species of property could not have been the
substantial object of the residuary clause. And the great improba-
bility, from the state of his physical health when the will was exe-
cuted, that he would ever acquire any other property of that
description, very much confirms this conclusion. The reference
made to his real estate then owned, or afterward to be acquired by
the testator, must have been for these reasons mere formalities of
expression, rather than designed as substantial dispositions of prop-
erty. The state of his property and the near approach of his disso-
lution combine to exclude every other supposition.

What he designed chiefly to accomplish by the residuary clause
was the disposition of the remainder of his personal estate; and he
adopted the words, "heirs and next of kin" as equally appropriate

to the expression of his purpose concerning it. That is evident from the connection in which they were used by him, as well as from the condition of his estate and his bodily health. The understanding appears to have been that they should refer to and indicate the same class of persons. He did not declare that his heirs should receive his real estate and his next of kin the personalty, but that all should go to his heirs and next of kin in the same manner; and by combining both terms it was his object to declare that whoever might fall within the designation of heirs, as he used that term, should become equal participants in the residue of all his property as next of kin. The term was directly applied to the personal estate, and that was within its import as it was made use of by the testator. His widow was probably understood by him to be an heir and as such intended to be included. That was indicated by the reference made to her rights under the will, for the purpose of regulating the amount she could draw from his estate while it remained undivided. If she was to be restrained to the legacy of $100,000, given her in the first place, that, of itself, was but one interest, and there is good reason, therefore, for supposing that it would afterward have been so referred to for the purpose of ascertaining the amount of the earnings of the estate she might be entitled to receive. But the testator gave expression to no such purpose. On the contrary, he declared that she should receive that portion of the earnings which her *interests* under the will bore to the whole net earnings. This word "interests" seems to have been designedly and intelligently used in this connection, after the legacy and the distribution of the residue were provided for, showing his understanding that she would take the share allotted by law to the widow in the residue. Without that share the word was improper and inappropriate, for then she would have but a single interest in the personal estate from which the earnings were to be derived. But with the right to that share, the reference to her "interests" under the will was clear and intelligible, and it could not be made so in any other way. It is a circumstance indicating the testator's understanding that his widow was not restricted by his will to a single interest in the personal estate, as she would be if she were excluded from the right of participating in the final residue.

Standing alone it may be doubtful under the authorities how far

the term "heirs" should be extended in its operation upon the distribution of personal estate. The English cases are collected and discussed in volumes 1, 2, part 2 [N. S.], of the Jurist for 1855, 1856, 211–213, and the conclusion stated, that the term probably would not include the widow. But that is not consistent with all the authorities decided by the courts of equity in that country. The case of *Lord* v. *Smith*, reported in volume 2, part 1 of the Jurist for 1850, page 344, which was decided upon an examination of the authorities, was made upon a different consideration of the law. And that was also the view taken in *Croom* v. *Herring* (4 Hawk [N. C.], 393), and *Eddings* v. *Long* (10 Alabama, 203), in which it was held that the term heir, when applied to the distribution of personal estate, inclu'ed the widow. *Gittings* v. *McDermott* (2 Mylne & K., 69), also sustains that conclusion. Authorities have been cited and relied upon by the counsel for the appellants sustaining the doubt already expressed. Most notably among these is the case of *Garrich* v. *Camden* (14 Vesey, 372). But even that case concedes what must without doubt be the law, that the construction must be consonant to what, from the whole will, appears to have been the intention of the testator.

The clause of the will making the disposition of the residue, has also expressed his purpose with reasonable clearness. And that was done in the general terms, declaring that the entire residue of his personal estate should be divided among the persons who could be considered his heirs and next of kin for that purpose, under the laws of the State of New York. It was an express reference of the disposition which should be made to the provisions which the statute contained upon that subject. And that was done to relieve the direction from the ambiguity which might have existed without it. The object was to give conciseness and certainty to the terms which, without such reference, might possibly prove ambiguous in their signification. And it showed that the testator intended that the residue of his estate should be disposed of, according to the statute governing the case of intestacy. And that could only be done by giving the widow her share, and dividing the remainder between the next of kin properly so called. They could only take it, as the testator directed they should, "in the same manner" that they would by the laws of the State, if he had died intestate, by dividing

it in that way. The estate could not otherwise be distributed in the manner provided for by the laws he mentioned. And the reference must have been made to them, for the purpose of having them prevail over the distribution of the property. The substance of the direction, was, that the laws of the State should declare the disposition which should be made of the residue. That construction is supported by the language made use of by the testator, by the general intent controlling the specific disposition of property made by him, to the persons whom he designed should participate in his estate, and by the direction, that the portion of the earnings of his property which the widow should receive, while the estate remained undivided, should be apportioned to her interests instead of being limited to the single interest created by the legacy of $100,000. His first object was to give the legacies mentioned, to his widow, his sister, and his three half sisters. That was the primary purpose, and they appear to have been the only objects of his testamentary solicitude. His widow first, his sister next, and his half sisters afterward. The first design was to provide in express terms for them, by making specific bequests in their favor. And no good reason exists for supposing that he intended any other departure from that general plan, in the distribution of the residue of his estate, than such as might be made by rendering it dependent upon the laws of the State applicable to cases of intestacy. The object was to leave that to the disposition which the laws would make of it. By the papers accompanying the brief presented by the respondent's counsel, this precise point appears to have been decided in this manner by the General Term of the third district, in 1863, in the unreported case of *Knickerbocker* v. *Seymour.* The general inclination of the authorities is in the same direction. For that, as well as the other reasons assigned, and those mentioned by the surrogate in his opinion, the will was rightly construed. No other objection has been taken to the decree, and it should therefore be affirmed with costs to the several parties represented, to be paid by the executrix and executor out of the estate.

Davis, P. J., Brady, J. :

We think by the residuary clause the testator meant to declare his intentions, that the *residue* of his estate should be *distributed* under the laws of the State of New York, as though he had died intestate.

He intended that his executors should perform that duty, and in using the words "heirs and next of kin," he meant to include every one entitled to distribution in case of intestacy. We concur, therefore, in the affirmance of the decree.

Decree affirmed with costs to the several parties, to be paid by the executrix and executor out of the estate.